**TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN**

NO. 03-23-00085-CV

**Stephen Sakonchick, II, Appellant**

**v.**

**Overlook at Rob Roy Owner, LLC, Appellee**

**FROM THE 299TH DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-18-006114, THE HONORABLE CLEVE WESTON DOTY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Stephen Sakonchick, II appeals the trial court's final judgment granting Overlook at Rob Roy Owner, LLC's (Overlook) motions for summary judgment and awarding Overlook attorneys' fees and sanctions. We affirm.

## PROCEDURAL HISTORY

This appeal concerns a stretch of road in Travis County known as Canon Wren Drive (Canon Wren). In 1991, Sakonchick bought his lot in a subdivision known as the Rob Roy on the Canyon Subdivision (Subdivision) and built a house on his lot one year later. At all times relevant to the underlying suit, the Subdivision contained 27 homes. The Subdivision was created by a Declaration and Plat filed November 24, 1981 (the Plat). The Plat specifically "dedicates to the public all streets and easements" shown on the Plat, and the Subdivision's lots were sold pursuant to the recorded plats and houses were constructed on those lots—including Sakonchick's.

Overlook owns a commercial office building complex located at the corner of Canon Wren and Bee Caves Road, known as the Overlook at Rob Roy. The Overlook is not part of the Subdivision of homes but directly abuts Canon Wren.

**The HOA Lawsuit[1]**

In 2008, Overlook, along with the homeowners in the Subdivision, lobbied the Texas Department of Transportation (TxDOT) to install a traffic light at the intersection of Canon Wren and Bee Caves Road. Sakonchick wrote to the other homeowners in an email, stating he opposed the installation of the traffic light. The homeowners responded that they would sue him if he sought to interfere. Despite this, and unbeknownst to the homeowners, Sakonchick secretly wrote to TxDOT, misrepresenting the homeowners' position on the traffic light and threatened to sue Overlook if it attempted to access Canon Wren; these actions were based on Sakonchick's belief that Canon Wren is a private road. This was not the first time Sakonchick expressed this opinion. In 1998, Sakonchick contacted TxDOT to express his opinion that Canon Wren is a private road; TxDOT rejected this assertion, responding to Sakonchick with an opinion letter explaining how his claim to a private road was legally unfounded. In response to Sakonchick's opposition to the traffic light, the Subdivision's Homeowners' Association and several lot owners (i.e., homeowners) within the Subdivision (collectively, the HOA) sued Sakonchick in Travis County District Court to enjoin Sakonchick from interfering with the installation of the traffic light (the HOA Lawsuit).[2] Overlook was not a party to the HOA Lawsuit. The HOA requested

___

[1] The following facts are taken from the summary-judgment evidence, which included filings from the HOA Lawsuit.

[2] *See Rob Roy on the Canyon Homeowners Ass'n v. Stephen Sakonchick, II*, Cause No. D-1-GN-08-001189.

declaratory relief that Canon Wren is a public road and that Overlook had a general right of access to it through a driveway permit from Travis County.[3] Sakonchick filed a counterclaim, asserting that Canon Wren was not a public road because it had not been accepted for maintenance by Travis County and that the lot owners of the Plat (i.e., the homeowners)—but not the public—had a right-of-way easement to Canon Wren. His counterclaim sought declaratory relief, including a declaration that: "[u]ntil Travis County accepts the dedication of Canon Wren, Travis County lacks authority and/or jurisdiction to grant access rights to Canon Wren to adjoining properties not shown as a subdivision lot on the Plat"; and "[u]ntil Travis County accepts the Dedication of Canon Wren, Canon Wren retains all the indicia of a private road."

The trial court granted the HOA's first motion for partial summary judgment and issued a declaration that "Canon Wren is a public street" and that the Overlook property "had a general right of access to Canon Wren through a driveway permit from Travis County, subject to the standard requirements of Travis County." The trial court then dismissed Sakonchick's counterclaim for declaratory relief, finding that his requested declarations "are contrary to the declarations [issued in the previous order] or state undisputed facts that are not dispositive of this case." The trial court issued final judgment in favor of the HOA and awarded attorneys' fees.

**Garage Construction**

In 2014, Overlook built a third office building and a driveway onto Canon Wren. In 2018, Overlook filed an application for a development permit to build a parking garage (the Garage) abutting Canon Wren behind the third office building. The Garage would have two levels

---

[3] Throughout the HOA Lawsuit, the HOA used the terms "public street" and "public road" interchangeably.

or "decks." The upper deck would be connected to the existing driveway which exited onto Canon Wren, while the lower deck would then be connected by a second driveway onto Canon Wren. Travis County approved Overlook's plans for the Garage and issued Overlook a development permit. Overlook did not apply for or obtain a driveway permit but applied for a full development permit from Travis County, which was approved.

**The Present Suit**

In October 2018, Sakonchick filed the underlying suit against Overlook and Travis County seeking an injunction to prevent traffic from the Garage from exiting onto the Canon Wren right-of-way and from the construction of a second drive onto the Canon Wren right-of-way.[4] Specifically, he alleged that Travis County did not have the authority to issue the development permit, and that the entire Garage was an illegal land use and would impair his easement in the Canon Wren right-of-way. He also claimed that Overlook was required to obtain a driveway permit but failed to do so.

Overlook filed special exceptions and a counterclaim for declaratory relief, seeking a declaratory judgment that Canon Wren is a public road, and that because it was a public road Travis County controlled the right of access to Canon Wren by adjoining lot owners including Overlook. Overlook also sought declaratory relief that its construction plans were in full compliance with Travis County regulations and that it had obtained all necessary approvals to construct the driveway for the Garage accessing Canon Wren. At the hearing on Overlook's

---

[4] Sakonchick's claims against Travis County included constitutional violations, namely that he was denied due process when the County failed to give him notice of the Garage's construction, and other claims asserting that it lacked authority to issue the permit.

special exceptions, the trial court ordered Sakonchick to replead before his request for injunctive relief could be heard.

After repleading, Sakonchick filed his first amended petition seeking damages for private nuisance, intentional nuisance, and negligent nuisance with respect to the Garage and its access to Canon Wren. He also sought causes of action that Overlook argued were noncognizable, including "Destruction of Private Property," "Failure to Comply with the Order," "Impairment of Easement Rights," "Parking of Construction Vehicles on the Canon Wren Right of Way," and "Damage to the Rights of Way." Once again, Sakonchick sought injunctive relief that Overlook contended was a "thinly veiled effort[] at obtaining declaratory relief without expressly pleading for same under the [Uniform Declaratory Judgments Act]." Overlook then filed an amended counterclaim on April 3, 2019, pleading additional requests for declaratory relief, including that it had the right to access Canon Wren as the owner of an easement appurtenant and that Sakonchick did not own Canon Wren or any improvements located within the right of way adjoining Overlook's property.

In April 2019, the trial court granted Travis County's plea to the jurisdiction, dismissing Sakonchick's claims against it. This Court affirmed the dismissal, holding that Sakonchick had no vested property interest in Canon Wren. *See Sakonchick II v. Travis County*, No. 03-19-00323-CV, 2019 WL 5582241, at *3 (Tex. App.—Austin, Oct. 30, 2019, no pet.) (mem. op.) ("Here, Sakonchick is correct that he has a vested property right in access to his home, and no one argues otherwise. He and his neighbors do not, however, have an exclusive right to use Canon Wren to access the neighborhood without encountering traffic or any other inconvenience typically associated with suburban life.") (citations omitted).

5

After several rounds of Overlook asserting—and being granted—special exceptions to Sakonchick's pleadings, Sakonchick filed his sixth amended petition on November 2, 2020, which is the live pleading.

**Overlook's First Motion for Summary Judgment**

On October 19, 2020, Overlook filed a traditional and no-evidence motion for summary judgment on Sakonchick's claims (Overlook's First Motion for Summary Judgment); the no-evidence grounds alleged that there was no evidence to support Sakonchick's claims for trespass, negligence, nuisance, injunctive relief, and impairment to private easement rights; and the three traditional grounds included the doctrine of collateral estoppel, the law-of-the-case doctrine, and Sakonchick's lack of standing. Sakonchick filed a cross motion for partial summary judgment. In December 2020, the trial court granted Overlook's First Motion for Summary Judgment and denied Sakonchick's cross motion for partial summary judgment.

**Overlook's Second Amended Counterclaim**

In May 2021, Overlook filed its second amended counterclaim, seeking the following declarations under the UDJA:

  a. Canon Wren is a public road;

  b. Sakonchick holds a right-of-way easement to Canon Wren because Canon Wren is a public road. Sakonchick's right-of-way easement includes rights to use Canon Wren for travel, and transportation of persons and property;

  c. Sakonchick's right-of-way easement to Canon Wren is the same right-of-way easement vested in the general public because Canon Wren was dedicated to Travis County as a public road. The public's right-of-way easement includes rights to use Canon Wren for travel, and transportation of persons and property;

6

d.  Other than holding a right-of-way easement to Canon Wren, Sakonchick does not own or hold any other easement right(s) to Canon Wren because Canon Wren is a public road;

e.  Sakonchick does not own Canon Wren Drive or any improvements, including monuments, landscaping and irrigation, located within the right of way adjoining Defendant's property;

f.  Sakonchick is barred by the doctrine of collateral estoppel from challenging now, or any point in the future, Overlook's right of access to Canon Wren and/or challenging Canon Wren's status as a public road; and

g.  Sakonchick has no right to challenge Overlook's right of access to Canon Wren Road.

*See generally* Tex. Civ. Prac. & Rem. Code §§ 37.001–011.  Sakonchick moved for summary judgment on Overlook's claims for declaratory relief on the ground that they were improper requests under the UDJA.  The trial court granted Sakonchick's motion as to counts (a)-(c) above, but denied the remainder.  In its order, the trial court stated that counts (d)-(g) presented "greater ramifications than the original suit and would have the effect of settling all future disputes, making Overlook's request for declaratory relief proper."

**Overlook's Second Motion for Summary Judgment**

In February 2022, Overlook moved for traditional summary judgment on its remaining requests for declaratory judgment, and Sakonchick filed two cross motions for summary judgment in response.  The trial court granted Overlook's motion and denied Sakonchick's motions.  In its order, the trial court declared:

Canon Wren is a common law "public road", and the holder of a private easement regarding the road has no right superior to or different from the general public's rights with respect to the road or

7

to its right of way, including personal property in the right of way.
These claims are collaterally estopped.

The order set Overlook's remaining claim for attorneys' fees for trial.

**Trial and Sanctions**

The trial occurred over two days. The only witnesses included Overlook's trial counsel, Melanie Cogburn and Brian P. Casey, who testified as to the reasonableness of their attorneys' fees incurred in defending the case and pursuing counterclaims against Sakonchick. The jury issued a unanimous verdict, awarding $119,260.15 in attorneys' fees for representation of Overlook at the trial court. The verdict also awarded Overlook's counsel contingent appellate attorneys' fees, including for representation in the court of appeals, and representation for all stages of briefing in the Texas Supreme Court, including oral argument. After trial, Overlook filed a motion to enter judgment and for sanctions. At a hearing on the motion, Overlook's counsel requested all reasonable attorneys' fees found by the jury, and in addition, $64,000.00 as a sanction for defending against Sakonchick's frivolous claims and pursuing the sanctions motion. At the hearing, Sakonchick again argued that he had an interest superior to the public in Canon Wren. On November 22, 2022, the trial court rendered final judgment and awarded Overlook the full amount of the jury's findings on attorneys' fees. In addition, the trial court awarded Overlook $53,410.00 as a sanction against Sakonchick. Sakonchick timely perfected this appeal.

In five issues, Sakonchick argues (1) the trial court erred in granting Overlook's First Motion for Summary Judgment; (2) the trial court erred in granting Overlook's Second Motion for Summary Judgment; (3) the trial court abused its discretion in sustaining Overlook's objections to Sakonchick's summary-judgment evidence; (4) the trial court abused its discretion

in awarding Overlook attorneys' fees on its declaratory judgment claims; and (5) the trial court erred in awarding Overlook sanctions.[5]

## ANALYSIS

### I. Whether the trial court erred in granting Overlook's First Motion for Summary Judgment

When a party moves for summary judgment on both no-evidence and traditional grounds, as Overlook did here, the appellate court generally reviews the trial court's judgment under the no-evidence standard of review first. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017).

**No-evidence grounds**

"After adequate time for discovery, a party, without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). The appellate court will affirm a no-evidence summary judgment only if the record shows one of the following: (1) there is no-evidence of the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla; (3) the evidence establishes the opposite of the challenged element; or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 589 (Tex. 2015). We review the grant of a no-evidence motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

---

[5] We have rearranged Sakonchick's issues to address the trial court's rulings in chronological order.

*Injunctive Relief*

At the time Overlook filed its motion for summary judgment, Sakonchick's live claims in the underlying suit included: trespass, negligence, nuisance, and impairment of rights in private easement. In addition to these claims for damages, Sakonchick also sought an injunction to enforce the declaratory judgment in the HOA Lawsuit that Overlook was required to obtain a driveway permit to access Canon Wren. The relevant declaration states:

> IT IS FURTHER ORDERED and the Court hereby DECLARES that the contiguous commercial property on the plat for the Bee Creek Hills Subdivision in Travis County, Texas, labeled "Judge Thomas Blackwell" has a general right to access to Canon Wren Drive through a driveway permit from Travis County, subject to the standard requirements of Travis County.

On appeal, Sakonchick argues that Overlook was a "donee beneficiary" of the judgment in the HOA Lawsuit and that quasi estoppel binds Overlook to the declaration. However, he cites to no authority to support this assertion, nor can we find any. Rather, the UDJA unequivocally states, "[a] declaration does not prejudice the rights of a person not a party to the proceeding." Tex. Civ. Prac. & Rem. Code § 37.006(a). The HOA Lawsuit was brought by the Subdivision's HOA and several homeowners in the Subdivision against Sakonchick; at no point was Overlook a party to that suit. Accordingly, we cannot conclude that Overlook was bound by the previous declaration, and we overrule this sub-issue.

Based on the above, we conclude the trial court did not err in granting Overlook's no-evidence motion for summary judgment on Sakonchick's request for injunctive relief. Next, we turn to Overlook's traditional summary judgment grounds.

**Traditional summary judgment grounds – collateral estoppel**

In the trial court and on appeal, Overlook argued that all of Sakonchick's claims in his live petition are founded on Sakonchick's claim that he has a possessory interest in Canon Wren and therefore the claims are barred by the doctrine of collateral estoppel. Specifically, Overlook claimed the doctrine of collateral estoppel as an affirmative defense, arguing that Sakonchick is estopped from asserting that such an easement exists, based on the HOA Lawsuit that determined that Canon Wren a public road and expressly denied Sakonchick's request for declaratory judgment that Canon Wren is a private road over which he has a private easement. Overlook also argued that, even if an easement did exist, Sakonchick's claims related to the easement were barred by the law-of-the-case doctrine, citing this Court's holding in *Sakonchick II* that Sakonchick has no vested property interest in Canon Wren. 2019 WL 5582241, at *3.

Overlook's First Motion argued that there is no evidence to support Sakonchick's claims because they are all predicated on the declaration from the HOA Lawsuit that Canon Wren is a public road, and that therefore his claims are collaterally estopped. Because collateral estoppel is an affirmative defense, the defendant asserting it has the burden of pleading and proving all elements necessary for the doctrine to apply. *Calabrian Corp. v. Alliance Specialty Chems., Inc.*, 418 S.W.3d 154, 158 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also* Tex. R. Civ. P. 94 (listing estoppel as affirmative defense).

A party moving for traditional summary judgment has the burden to demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). "We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable

11

jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). In reviewing summary judgment on appeal, we must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). For both traditional and no-evidence motions, the court views the evidence in the light most favorable to the nonmovant. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

To support its traditional motion for summary judgment, Overlook requested that the trial court take judicial notice of the pleadings and orders contained in the HOA Lawsuit, including the HOA Lawsuit's final judgment that contains the relevant declaration:

> "IT IS THEREFORE ORDERED and the Court hereby DECLARES that Canon Wren Drive in Travis County, Texas, is a public street."

In his response, Sakonchick submitted evidence including an approximately 19-page declaration written by Sakonchick himself, largely reiterating the allegations contained within his pleadings. Attached to the declaration were several exhibits, including: the 1981 Plat records; Sakonchick's property deed; excerpts from the Travis County Road Index; deeds from the property's previous owners; the Unified Development Agreement; the HOA Lawsuit order of final judgment; correspondence between Sakonchick and Overlook's attorney; the stated requirements for a Travis County driveway permit; pictures of construction vehicles parked on the paved portion of Canon Wren; and a 1999 Agreement between CGA Development and the Rob Roy Homeowners' Association.

The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in a prior suit. *Getty Oil Co. v. Insurance Co. of*

12

*N. Am.*, 845 S.W.2d 794, 801 (Tex. 1992); *Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W.2d 926, 927 (Tex. 1988). "The term 'ultimate issue' does not refer to a cause of action or a claim." *Tarter*, 744 S.W.2d at 928. Collateral estoppel applies when the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior suit and lost. *See Quinney Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex. 1999); *Tarter*, 744 S.W.2d at 927. Collateral estoppel is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding relitigation of issues. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 802 (Tex. 1994). A party seeking to assert the bar of collateral estoppel must establish that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Id.* at 801.

Here, Overlook argued that the trial court's declaration in the HOA Lawsuit that Canon Wren was a public road was fully and fairly litigated in the HOA Lawsuit, was essential to the judgment in the HOA Lawsuit, and Sakonchick and his neighbors' interests were adverse to one another in the HOA Lawsuit. And that, because Sakonchick's claims relied on the underlying fact that he had a private easement to this private road, all the claims must fail as a matter of law. On appeal, Sakonchick argues that collateral estoppel does not apply because the issues in the underlying suit do not contain identical issues of fact or law which were actually litigated and essential to the judgment in the HOA Lawsuit; he claims that the HOA Lawsuit dealt with public right of access to Canon Wren, while the underlying suit dealt with the extent of Sakonchick's private easement in that street.

13

Because we have concluded that summary judgment on Sakonchick's request for injunctive relief was proper on no-evidence grounds, we now turn to whether Overlook was entitled to summary judgment on the trespass, negligence, nuisance, and impairment to private easement claims based on its affirmative defense of collateral estoppel. *See Parker*, 514 S.W.3d at 219.

*Trespass*

A claim for trespass requires that the plaintiff prove: (1) he owns or has a lawful right to possess the real property that forms the basis of his claims; (2) the defendant entered property that the plaintiff owns or has a lawful right to possess and that such entry was physical, intentional and voluntary; and (3) the trespass caused injury to the plaintiff. *See Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). Sakonchick's claim of trespass is based entirely on his belief that he owns a "private easement." However, easements do not constitute a possessory interest sufficient to support claims for trespass. *See Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 312 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (citing Restatement (Third) of Property (Servitudes) § 1.2 cmt. d.) (2000) (providing that, unlike possessory interest in land, easement is nonpossessory interest that authorizes its holder to use property for particular purposes). And Sakonchick did not present evidence that he otherwise has a possessory interest in Canon Wren; indeed, the declaration in the HOA Lawsuit that Canon Wren is a public road explicitly foreclosed such an argument. Accordingly, Sakonchick was collaterally estopped from relitigating the issue of whether Canon Wren is a public road, which is a material fact underlying the first element of his trespass claim. We conclude the trial court did not err in

14

granting Overlook's summary-judgment motion on the grounds that there is no genuine issue as to any material fact and that Overlook is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Wilen*, 191 S.W.3d at 798.

*Negligence*

Next, Sakonchick alleged that Overlook's design of the Garage constituted "negligent nuisance" because the Garage's exiting traffic onto Canon Wren diminishes the fair market value of Sakonchick's property, and that the grading required to create the lower driveway "intentionally destroyed" a monument, irrigation lines, and a portion of landscaping that Sakonchick had allegedly put in place with the other homeowners several years ago, thus amounting to "negligent destruction of personal property."

To prevail on a claim for negligence, the plaintiff must show: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the defendant's breach proximately caused the plaintiff damages. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). Overlook argued that it did not owe Sakonchick a duty because Overlook was entitled to access Canon Wren because it was a public road, and that Overlook was granted a development permit to access Canon Wren, and any personal property or improvements placed in the right-of-way were encroachments. Overlook further argued that it did not owe Sakonchick a duty because Sakonchick does not own the improvements, he does not own the land or the land underneath the improvements, and he did not pay for them, as they were installed by the HOA. We agree and note that Sakonchick's allegations once more depend on the incorrect assumption that he has a superior right to Canon Wren—despite the declaration in the HOA Lawsuit that stated otherwise. Accordingly, Sakonchick was collaterally estopped from relitigating that issue and

15

thus, we conclude the trial court did not err in granting summary judgment to Overlook on this claim.

*Nuisance*

A claim for nuisance requires that the plaintiff show: (1) there is a condition that substantially interferes with the use and enjoyment of the plaintiff's land; (2) the interference causes unreasonable discomfort or annoyance to persons of ordinary sensibilities; and (3) the plaintiff has a possessory interest to support his claims of nuisance. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 595 (Tex. 2016). Once more, Sakonchick's nuisance claims cannot prevail because they depend upon Sakonchick's having a possessory interest in Canon Wren, which was explicitly rejected in the final judgment of the HOA Lawsuit. *Hot Rod Hill Motor Park v. Triolo,* 293 S.W.3d 788, 790 (Tex. App.—Waco 2009, pet. denied) (explaining that nuisance claim requires possessory interest in land). And to the extent Sakonchick bases his claims of nuisance on his purported private easement, his arguments also fail because a private easement is not a possessory interest in land. *Krohn*, 90 S.W.3d at 700. Thus, we conclude that because Sakonchick was collaterally estopped from relitigating the private easement issue, the trial court did not err in granting summary judgment to Overlook on this basis.

*Impairment of rights in private easement*

Claims based on impairment or interference to a private easement require that the plaintiff prove: (1) the existence of private easement; and (2) the plaintiff's right of access to the plaintiff's property was materially and substantially impaired. *See City of San Antonio v. Olivares*, 505 S.W.2d 526, 530 (Tex. 1974). As evidence to support his claim that his right of access to

16

Canon Wren was substantially and materially impaired, Sakonchick provided pictures of the construction vehicles and averred the following in his declaration:

- Construction vehicles exiting the Lower Drive, some forward and some backing out, created a dangerous condition for me driving north on Canon Wren Drive after exiting Bee Cave[s] Road during the construction of the Garage and Drives, because of the limited site distance and apparent indifference of the construction vehicle drivers to me or other RROC traffic.

- In addition, during the construction phase, construction vehicles would park on the paved portion of the Canon Wren Drive Right of Way with no consideration to my safety or the safety of other RROC residents using Canon Wren Drive. When safety would mandate the use of a flagman in these circumstances, Defendant Overlook failed and refused to provide them. This created a substantially dangerous condition for those like me required to use Canon Wren Drive for access to our homes.

But like the other claims, this claim too requires that Sakonchick show he has private easement rights to Canon Wren. And. as the HOA Lawsuit determined Canon Wren is a public road to which Sakonchick has no greater easement rights than the general public, Sakonchick is precluded from relitigating the issue.

We overrule Sakonchick's first issue.

## II.     Whether the trial court erred in granting Overlook's Second Motion for Summary Judgment

Overlook moved for traditional summary judgment under Rule 166a(c) on its counterclaim for declaratory relief (Overlook's Second Motion for Summary Judgment), *see* Tex. R. Civ. P. 166a(c), which the trial court granted and Sakonchick challenges as his second issue on appeal. Overlook sought the following declarations:

17

(1) Overlook is entitled to declaratory judgment as a matter of law that Sakonchick is barred by the doctrine of collateral estoppel from challenging now, or any point in the future, Overlook's right of access to Canon Wren and/or challenging Canon Wren's status as a public road;

(2) Overlook is entitled to declaratory judgment as a matter of law that other than holding a right-of-way easement to Canon Wren, Sakonchick does not own or hold any other easement right(s) to Canon Wren because Canon Wren is a public road;

(3) Overlook is entitled to a declaratory judgment as a matter of law that Sakonchick does not own Canon Wren Drive or any improvements including monuments, landscaping and irrigation, located within the right of way adjoining Overlook's property;

(4) Overlook is entitled to a declaratory judgment as a matter of law that Sakonchick has no right to challenge Overlook's right of access to Canon Wren Drive.

As in its First Motion for Summary Judgment, Overlook requested that the Court take judicial notice of the HOA Lawsuit, and the contents of the pleadings and orders on file in the HOA Lawsuit. In addition, it included the following summary-judgment evidence: Sakonchick's live petition, portions of Sakonchick's deposition, the declarations of Overlook attorney Melanie Cogburn, and the declaration of Robert Glasper, a custodian of records for Travis County's Department of Transportation and Natural Resources.

Sakonchick filed a response, which included his own declaration (as discussed in Sakonchick's third issue, *infra*). After a hearing, the trial court denied Sakonchick's cross motion for summary judgment, sustained Overlook's objections to Sakonchick's declaration, and granted Overlook's Second Motion for Summary Judgment in its entirety. The trial court issued Overlook its requested declarations, stating:

18

Canon Wren is a common law "public road", and the holder of a private easement regarding the road has no right superior to or different from the general public's rights with respect to the road or to its right of way, including personal property within the right of way. These claims are collaterally estopped.

Under the UDJA, "a person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations." Tex. Civ. Prac. & Rem. Code § 37.004(a). We review declaratory judgments under the same standards as other judgments. *Id.* § 37.010. Because Overlook obtained declaratory relief based on its traditional summary-judgment motion, we review the propriety of the declaratory judgment under the same standards that we apply in reviewing a summary judgment. *City of Galveston v. Texas Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

**Whether the trial court erred in determining Canon Wren is a common law "public road"**

Sakonchick first challenges the trial court's declaration that "Canon Wren is a common law 'public road.'" Specifically, he argues that: (1) the ruling is contrary to a previous ruling denying Overlook declaratory relief that Canon Wren is a public road; (2) there is no common law definition of a public road; (3) the determination is contrary to the trial court's judgment in the HOA Lawsuit that Canon Wren is a public street, and thus constitutes an impermissible collateral attack; and (4) the trial court lacked subject-matter jurisdiction to make the declaration.

19

Overlook responds that the summary-judgment evidence demonstrates the intent to dedicate Canon Wren as a public road and acceptance by sale of lots and by public use. Overlook also re-urges its argument that Sakonchick is collaterally estopped from challenging Canon Wren's status as a common law public road. We discuss each of these arguments in turn.

"Dedication of private land for a public purpose generally requires proof of offer and acceptance." *Keenan v. Robin*, __S.W.3d__, No. 23-0833, 2024 WL 5249568 (Tex. Dec. 31, 2024), at *5 (citing *Shelton v. Kalbow*, 489 S.W.3d 32, 44 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)). "Dedication of a road for public use may be express or implied." *Cowan v. Worrell*, 638 S.W.3d 244, 254 (Tex. App.—Eastland 2022, no pet.) (citing *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978)); *Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.). An express dedication is generally accomplished by deed or other written document. *Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 906 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Stein*, 53 S.W.3d at 42).

A landowner impliedly dedicates a road to public use when: (1) the landowner's acts induce the belief that he intended to dedicate the road to public use; (2) the landowner is competent; (3) the public relies on the act and will be served by the dedication; and (4) there is an offer and acceptance of the dedication. *Cowan*, 638 S.W.3d at 254 (citing *Lindner v. Hill*, 691 S.W.2d 590, 592 (Tex. 1985)). Whether a public right-of-way has been acquired by implied dedication is a question of fact. *Cowan*, 638 S.W.3d at 254 (citing *Hill*, 691 S.W.2d at 592). "Once a road has been dedicated to public use, that road remains subject to that use unless it is abandoned." *Cowan*, 638 S.W.3d at 255 (quoting *Betts v. Reed*, 165 S.W.3d 862, 870 (Tex. App.—Texarkana 2005, no pet.)).

20

Here, the summary-judgment evidence establishes that Canon Wren was expressly dedicated to the public. Overlook's evidence includes the affidavit of Gayla Dembrowski, Geographic Information Systems Specialist for Travis County Department of Transportation and Natural Resources, who attested that the Subdivision plat record attached to her affidavit shows that all streets and easement of the Subdivision are dedicated to the public. Dembrowski further attested that an attached letter dated February 14, 1990, from Shyra Darr, Director of the Public Improvements and Transportation Department, shows that Canon Wren is a roadway dedicated to the public via plat. In the letter, Darr grants a variance request for a driveway permit on Canon Wren. Darr explains that "[a]lthough Canon Wren Drive has not been accepted for maintenance by Travis County, it is a roadway that is dedicated to the public via plat." The summary-judgment evidence also included the affidavit of Stacey Scheffel, Flood Plain Manager for the Transportation and National Resource Division of Travis County, who attested that the attached Subdivision plat record shows that all streets and easement are dedicated to the public and that all property owners whose land is contiguous with Canon Wren have a right to access Canon Wren with driveway access if appropriate application is made. Scheffel further attested that an attached letter from Darr dated January 25, 1990, recites that "Canon Wren is a part of a legal subdivision with right-of-way dedicated for public road." Finally, Overlook's evidence included the affidavit of Subdivision resident Todd Smith, who stated that when he purchased his home in 2008, Canon Wren was a public street entirely open to anyone who chose to drive on it. Smith averred that he had unrestricted access to Canon Wren when he first viewed the property and every time thereafter.

The summary-judgment evidence shows that these facts are undisputed; indeed, in his cross motion for summary judgment, Sakonchick attached the Plat records as evidence and

21

stated that "Lot 18 [in the Subdivision] was conveyed to him with reference to the Plat," and that [Sakonchick] has a non-exclusive private easement appurtenant in the Canon Wren right of way, in addition to the public right of way granted to the general public by the Dedication, as a matter of law." Sakonchick then attempted to create a fact issue by arguing that, while Canon Wren's right-of-way was dedicated to the public, it was done so only as a public *street*, and not a public *road*. He advances the same argument on appeal. But Sakonchick has not cited, nor have we found, any authority to support this argument. Accordingly, we conclude that the undisputed summary-judgment evidence established that Canon Wren was a public common law road, and thus the trial court did not err in issuing this declaration. *See Keenan*, 2024 WL 5249568, at *5.

*Whether the declaration is contrary to the previous ruling*

In granting Sakonchick's motion for partial summary judgment on Overlook's counterclaim for declaratory relief, the trial court denied Overlook its requested declaration that Canon Wren is a public road. Sakonchick argues that Overlook cannot now argue that Canon Wren is a public road based on the law-of-the-case doctrine. "Under the law-of-the-case doctrine, a *court of appeals* is ordinarily bound by its initial decision if there is a subsequent appeal in the same case." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003) (emphasis added). Sakonchick has not cited to, nor can we find, authority indicating that the law-of-the-case doctrine also applies to initial decisions and subsequent rulings at the trial court level. Accordingly, we overrule this sub-issue.

22

*Whether the trial court lacked subject-matter jurisdiction to issue the declaration*

Lastly, Sakonchick asserts the trial court lacked subject-matter jurisdiction to declare Canon Wren a public road because it constitutes an impermissible collateral attack on a prior judgment. We disagree.

"A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but to obtain some specific relief which the judgment currently stands as a bar against." *Browning v. Prostok,* 165 S.W.3d 336, 346 (Tex. 2005). A collateral attack is an attempt to avoid the effect of the former judgment to obtain specific relief the judgment currently impedes. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012). Collateral attacks on judgments are generally disallowed because it is the policy of the law to give finality to the judgments of the courts. *Browning,* 165 S.W.3d at 345. Determining whether a declaratory judgment action is an impermissible collateral attack on a prior judgment involves analysis of the following principles: First, trial courts lack subject-matter jurisdiction over a suit to interpret a prior final judgment because the underlying controversy has already been resolved by the final judgment, thus leaving no justiciable controversy for the trial court to adjudicate. *Texas Dep't of Ins., Div. of Workers' Comp. v. Insurance Co.*, 306 S.W.3d 897, 902 (Tex. App—Austin 2010, no pet.). Second, while the UDJA allows courts to declare the parties' rights under statutes, ordinances, and contracts, this does not extend to "judgments." *Id.* Finally, courts have held that declaratory-judgment actions seeking to "interpret" a prior judgment, even if not explicitly praying for its invalidation, would amount to an impermissible "collateral attack" on the prior judgment. *Id.*

Here, Overlook's request for declaratory relief did not ask the trial court to impermissibly construe the HOA Lawsuit judgment or invalidate it. Rather, it sought to "declare

23

Sakonchick's rights" as to the Canon Wren easement in light of the HOA Lawsuit judgment. We also cannot conclude that Overlook's request sought to "interpret" the previous declaration to their benefit; rather, Overlook is relying on it as a means of enforcing its rights to Canon Wren going forward. *See Texas Dep't of Ins.*, 306 S.W.3d at 903 (holding that declaratory judgment action was not collateral attack on previous judgment where party relied on previous judgment as basis for its original claim for reimbursement). We therefore cannot conclude that the trial court lacked jurisdiction to enter the declaration, and we overrule this sub-issue.

**Whether the trial court erred in declaring the scope of Sakonchick's easement rights (and right to place personal property in the right-of-way)**

Sakonchick claims that the trial court erred by declaring that "the holder of a private easement regarding the road has no right superior to or different from the general public's rights with respect to the road or to its right of way, including personal property within the right of way." Sakonchick argues that the summary-judgment evidence raises a fact issue concerning whether he possesses easement rights in Canon Wren superior to any interest maintained by the general public. Based on this reasoning, Sakonchick contends that he has a right to personal property placed in his private easement, and a right to place improvements in the right-of-way on Canon Wren.

Because we have concluded that the evidence established that Canon Wren is a public road, the evidence also established that Sakonchick does not possess easement rights greater than the public, including personal property, in the right of way. The Texas Supreme Court has recognized that "streets dedicated to the public receive more protection than private easements." *Keenan*, 2024 WL 5249568, at *5 (citing *Leebron*, 496 S.W.3d at 906 (concluding that once dedicated, owner of land reserves no rights that are incompatible with full enjoyment of public)). The supreme court explained that the easement "operates as an estoppel *in pais* of the owner, from

24

exclusive use of the property, or indeed any use, which is inconsistent with the public use, to which it has been dedicated and precludes the party from re-asserting any right over the land, so long as it remains in public use." *Id.* (cleaned up). The public's future use of a street easement is not dependent on the use that prevailed when the street opened and includes portions of the street not previously used or used for other purposes. *Id.* (citing *State v. NICO-WF1, L.L.C.*, 384 S.W.3d 818, 824 (Tex. 2012)).

As a matter of law, Sakonchick does not own Canon Wren and thus has no right to place personal property in the right-of-way. *See id.* "[A]ny permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance per se, and may be abated, notwithstanding space is left for the passage of the public." *Id.* (quoting *Joseph v. City of Austin*, 101 S.W.2d 381, 384 (Tex. App.—Austin 1936, writ ref'd)); *see also NICO-WF1*, 384 S.W.3d at 824 (explaining that "any structure that interferes with the public's present or future use of a dedicated street is a nuisance per se and subject to removal"). Accordingly, because we have concluded there is no fact issue as to whether Canon Wren is a common law public road, Sakonchick's argument that he possesses easement rights greater than the public must fail, *Keenan*, 2024 WL 5249568, at *5, and the trial court did not err in issuing this declaration.

**Whether Overlook's counterclaim for declaratory relief has greater ramifications than Sakonchick's original suit**

Finally, Sakonchick argues that the grant of declaratory relief was error because Overlook's requests for declaratory relief did not have "greater ramifications" than Sakonchick's original suit. We disagree.

Generally, declaratory relief is not available to settle a dispute that is currently pending before the court. *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (orig.

25

proceeding). However, a defendant may bring a counterclaim for declaratory judgment if it presents issues beyond those raised by the plaintiff. *Id.* A counterclaim for declaratory relief is appropriate when it has greater ramifications than the original suit. *Millard*, 800 S.W.2d at 842 (citing *Winslow v. Acker*, 781 S.W.2d 322, 328 (Tex. App.—San Antonio 1989, writ denied)). "A counterclaim has greater ramifications than the original suit if it seeks affirmative relief." *Howell v. Mauzy,* 899 S.W.2d 690, 706 (Tex. App.—Austin 1994, writ denied). To state a claim for affirmative relief, a defendant must allege a cause of action "independent of the plaintiff's claim on which the defendant could recover benefits, compensation, or relief, even if the plaintiff were to abandon or fail to establish his cause of action." *Id.* Our sister courts have held that "settling future controversies" is sufficient to constitute "affirmative relief." *See Hot–Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 728 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (holding that defendant's declaratory judgment counterclaim seeking declaration of state and federal eligibility of term "Habitat" for trademark protection constituted independent claim for affirmative relief beyond plaintiff's trademark infringement claim); *Georgiades v. Di Ferrante,* 871 S.W.2d 878, 880–81 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (declaratory judgment counterclaim seeking declaration of no common-law or ceremonial marriage was claim for affirmative relief beyond plaintiff's suit for divorce because it would define parties' obligations in future).

In *Winslow v. Acker,* the plaintiffs filed suit to recover their share of overriding royalties in a mineral estate. 781 S.W.2d at 323. In response, the defendants filed a counterclaim to obtain a declaration of their right to the overriding royalties. *Id.* The court of appeals held that, because the counterclaim would have the effect of "settling all future disputes as to the granting of royalties under the partition deed," it had greater ramifications than the original suit. *Id.* at 328;

26

*see Millard*, 800 S.W.2d at 842 (holding that counterclaim presented "greater ramifications" than original breach-of-contract suit because defendant sought interpretation of gas purchase contract which would have effect of defining obligations of parties under terms of contract for foreseeable future). Here, we conclude that Overlook's counterclaim presents greater ramifications than Sakonchick's original claims in that it seeks to resolve all future controversies between the parties related to Canon Wren. Sakonchick brought intentional tort and negligence claims against Overlook, but nowhere in his pleadings did he seek a final determination that he possesses a private easement, that Canon Wren is not a public road, or any other type of declaration that would resolve the parties' rights with respect to Canon Wren going forward. In contrast, Overlook's requested declarations that Canon Wren is a public road and that Sakonchick's easement rights were no greater than the general public's will serve to settle the parties' rights with respect to Canon Wren; specifically, that Overlook has the right to use it, has the right to access it, and has the right to sue in court to bring a claim for damages for any blockage or restriction to that access. *See Betts*, 165 S.W.3d at 872 (providing that damages are available resulting from denial of access to public road).

Moreover, the summary-judgement evidence establishes that Sakonchick has repeatedly refused to acknowledge that Canon Wren is a public road and continues to claim he has private easement rights to it, including the right to place personal property in it. By obtaining a declaration that Sakonchick's claims "are collaterally estopped" serves to then not only define the parties' rights going forward, but ideally serves to prevent Sakonchick from filing unnecessary litigation in the future. Thus, because we have concluded that the declarations will settle the parties' respective rights regarding Canon Wren and will prevent future litigation, we conclude this meets the definition of affirmative relief. *See Howell*, 899 S.W.2d at 706. Accordingly, we

27

conclude that Overlook's counterclaim for declaratory relief has greater ramifications than Sakonchick's original suit and the trial court did not err in granting summary judgment on this basis.

Having overruled all of Sakonchick's challenges to the trial court's order granting Overlook's Second Motion for Summary Judgment, we overrule Sakonchick's second issue.

### III.     Whether the trial court abused its discretion in sustaining Overlook's objections to Sakonchick's declaration in support of his response to Overlook's Second Motion for Summary Judgment?

In Sakonchick's third issue, he challenges the portion of the trial court's order sustaining Overlook's objections to Sakonchick's declaration, which was attached as part of Sakonchick's summary-judgment evidence.  Overlook objected to specific paragraphs of each of the declaration on the basis that they were conclusory and contained improper legal opinion.  On appeal, Sakonchick argues that the trial court abused its discretion in sustaining the objections because they were not sufficiently specific.[6]

We review a trial court's ruling sustaining an objection to summary-judgment evidence for an abuse of discretion. *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.).  "Simply quoting one or more sentences from particular paragraphs and stat[ing] 'the following evidence is improper because it is conclusory and/or is not based on

---

[6] Throughout the underlying suit, Sakonchick filed various declarations to support his arguments.  He attached one declaration to support his motion for summary judgment as to Overlook's Counterclaim on Collateral Estoppel, he attached another declaration to his motion for summary judgment on Overlook's Counterclaim on Private Easement, and he attached one to his Response to Overlook's Traditional Motion for Summary Judgment on its Claims for Declaratory Relief (Overlook's Second Motion for Summary Judgment).  While Overlook objected to each of these declarations, on appeal, Sakonchick appears to only challenge the sustained objections to the declaration in his response to Overlook's Second Motion for Summary Judgment.

personal knowledge," is not a sufficiently specific objection. *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.). In addition, objections that only identify the number of particular paragraphs and exhibits are insufficient to explain the basis of the objection. *Id.* Here, the entirety of Overlook's objections to the declaration states: "Plaintiff Overlook objects to paragraphs 11, 12, 13, 14, 15, 16, 17 as being conclusory and containing legal opinion." We cannot conclude that this statement, without more, rises to the threshold of "sufficiently specific." *See id.* Thus, we agree with Sakonchick that the trial court abused its discretion in sustaining the objections based on their lack of specificity. However, we also agree with Overlook's assertion that Sakonchick fails to adequately brief to this Court how the excluded evidence—if admitted—would create a fact issue sufficient to defeat summary judgment. Indeed, Sakonchick's argument on appeal is limited to his statement that the exclusion of the objected-to material "was clearly erroneous and an abuse of discretion which severely prejudiced Sakonchick in defending against Overlook's Second MSJ." This statement, without more, does not provide us with a basis to sustain Sakonchick's issue. *See Primo v. Rothenberg*, Nos. 14-13-00794-CV, 14-13-00997-CV, 2015 WL 3799763, at *16 n. 4 (Tex. App.—Houston [14th Dist.] June 18, 2015, pet. denied) (mem. op.) (noting that successful challenge to trial court's exclusion of summary-judgment evidence based on lack of specificity would be "inconsequential" because appellant failed to explain on appeal how summary judgment evidence, if admitted, would raise genuine issue of material fact). On this basis, we conclude that Sakonchick has not shown how the declaration's exclusion caused the rendition of an improper judgment, *see* Tex. R. App. P. 44.1(a)(1), and thus we overrule this issue.

**IV. Whether the trial court erred in awarding Overlook attorneys' fees for their declaratory judgment counterclaim**

In his fourth issue, Sakonchick contends that the trial court's award of attorneys' fees to Overlook was inequitable and unjust because: (1) Overlook's declaratory-judgment counterclaim was incidental to and lacked greater ramifications than Sakonchick's claims; (2) the counterclaim was made solely to recover attorneys' fees; and (3) the trial court lacked authority to award fees under the UDJA after it granted Overlook summary judgment on its counterclaim.

The UDJA authorizes a court to award "reasonable and necessary attorney's fees as are equitable and just" in "any proceeding under" the Act. Tex. Civ. Prac. & Rem. Code § 37.009. The court is not required to award attorneys' fees but may, within its discretion, award them "to the prevailing or non-prevailing party or decline to award attorney's fees to either party, regardless of which party sought the declaratory relief." *HMT Tank Serv. LLC v. American Tank & Vessel, Inc.*, 565 S.W.3d 799, 813 (Tex. App.—Houston [14th Dist.] 2018, no pet.). To be awarded attorney's fees, a party need not have "substantially prevailed." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996).

"The question of whether a fee award is equitable and just 'is not susceptible to direct proof but is rather a matter of fairness in light of all the circumstances.'" *Bailey v. Smith*, 581 S.W.3d 374, 398 (Tex. App.—Austin 2019, pet. denied) (quoting *Ridge Oil Co., v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004)). "An award can be inequitable or unjust even when the fees are reasonable and necessary." *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 893 (Tex. App.—Austin 2010, pet. denied).

We review a trial court's award of attorneys' fees under the UDJA for an abuse of discretion. *Allstate Ins. v. Irwin*, 627 S.W.3d 263, 270 (Tex. 2021). A court abuses its discretion

when there is "insufficient evidence that the fees were reasonable and necessary, or when the award is inequitable or unjust." *Save Our Springs*, 304 S.W.3d at 891. Whether attorneys' fees are reasonable and necessary are questions of fact; whether the fees are equitable and just are questions of law. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Bailey*, 581 S.W.3d at 395. The test for an abuse of discretion is whether the court acted arbitrarily, unreasonably, or without reference to guiding rules and principles. *See Bocquet*, 972 S.W.2d at 21; *Save Our Springs*, 304 S.W.3d at 893.

### *Greater Ramifications*

Because the UDJA is "not available to settle disputes already pending before a court," *John Chezik Buick Co. v. Friendly Chevrolet Co.*, 749 S.W.2d 591, 594 (Tex. App.—Dallas 1988, writ denied), "a party cannot bring a counterclaim for declaratory relief and recover attorney's fees when the counterclaim seeks resolution of disputes already" under consideration by the court, *Thomas v. Thomas*, 902 S.W.2d 621, 626 (Tex. App.—Austin 1995, writ denied) (citing *HECI Expl. Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 638–39 (Tex. App.—Austin 1992, writ denied). Relatedly, a court abuses its discretion by awarding attorneys' fees "in connection with a claim for declaratory relief when the [UDJA] is relied upon solely as a vehicle to recover attorney's fees." *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 445 (Tex. App.—Austin 2011, no pet.).

As discussed above, Overlook's counterclaim for declaratory relief had greater ramifications than Sakonchick's claims because it sought "a true declaration of an ongoing and continuing relationship" between the parties and definitively foreclosed the possibility of further attempts, by Sakonchick or others, to litigate the status of Canon Wren or to assert a private

31

right-of-access or possessory interest in the road. *See Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 390–91 (Tex. App.—Texarkana 2003, pet. denied). Consequently, the counterclaim, which did more than merely replead or defend against Sakonchick's claims in the instant action, was one for which Overlook was entitled to recover attorneys' fees. *See John Chezik Buick*, 749 S.W.2d at 595 (concluding that award of attorneys' fees was proper because counterclaim concerned "ongoing and continuing relationship" and "would settle all future disbursements of royalties"); *Howell*, 899 S.W.2d at 707 (recognizing that "declaratory-judgment counterclaims are proper if a declaratory judgment would have the effect of settling future disputes between the parties").

### *Attorneys' Fees Incurred Following Summary Judgment on Counterclaim*

Sakonchick reasons that "[o]nce Overlook was granted summary judgment under the UDJA[,] . . . any subsequent proceedings in Overlook's billings . . . were not proceedings under the UDJA," for which Overlook could recover attorneys' fees under section 37.009. As a result, he argues that the award of fees incurred after the grant of summary judgment—which he asserts amounted to $35,722, including contingent appellate attorneys' fees—was inequitable and unjust. In particular, he challenges the court's award of attorneys' fees incurred by Overlook while pursuing fees incurred in relation with its counterclaim.[7]

---

[7] Although Sakonchick also argues that Overlook "failed to obtain a separate jury determination of attorneys['] fees through [date of the summary-judgment grant]," he provides no authority supporting such a requirement. The jury properly awarded attorneys' fees that it determined were reasonable and necessary for Overlook's "pursuing and defending claims under the Uniform Declaratory Judgment Act" both before and after the trial court granted its motion for summary judgment on its counterclaim.

"[T]he UDJA permits a fee award in 'any proceeding' within its purview." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 356 (Tex. 2020) (quoting Tex. Civ. Prac. & Rem. Code § 37.009). Notably, fee claims made pursuant to section 37.009 are themselves proceedings under the UDJA. *See Devon Energy Prod. Co. v. KCS Res., LLC*, 450 S.W.3d 203, 222 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("KCS properly pleaded an ancillary claim for relief under the statute through its counterclaim for attorneys' fees."). Such claims "remain viable" even after the resolution of competing claims, *see id.*, and even if the trial court lacks jurisdiction over the claimant's claims for declaratory relief, *see Bailey*, 581 S.W.3d at 395 (concluding that courts possess authority to award attorneys' fees when they lack jurisdiction over claims "because the UDJA authorizes courts to award fees '[i]n any proceeding under the UDJA.'" (quoting *Save Our Springs*, 304 S.W.3d at 891)); *Feldman v. KPMG LLP*, 438 S.W.3d 678, 686 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (concluding that "the trial court had the power to award attorney's fees under Section 37.009 even though it had dismissed Feldman's claim for declaratory relief for lack of jurisdiction").

Moreover, the UDJA "authorizes courts to award equitable and just fees in any proceeding under the Act" without considering or rendering judgment on the merits of the underlying dispute. *Yowell*, 620 S.W.3d at 355 (citing *Castro v. McNabb*, 319 S.W.3d 721, 735 (Tex. App.—El Paso 2009, no pet.) ("The [UDJA] does not require a judgment on the merits of the dispute as a prerequisite to a fee award.")). Accordingly, the Act does not prohibit a trial court from awarding conditional appellate fees or fees to a party defending against a contingent claim for declaratory judgment. *Id.* at 355–56. A party seeking contingent appellate fees must, however, present evidence "about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.* at 355; *see Mustafa v. Asim*,

33

No. 03-23-00018-CV, 2024 WL 5241054, at *12 (Tex. App.—Austin Dec. 20, 2024, no pet. h.) (mem. op.).

Sakonchick does not challenge on appeal the reasonableness of the fee award assessed by the jury following a trial in August 2022. Pursuant to the lodestar method of calculating attorneys' fees, discussed in greater detail below, the trial court admitted Overlook's billing records into evidence during the trial. Brian Casey, an attorney for Overlook, testified about the fees it incurred litigating proceedings under the UDJA. Casey testified that he adjusts his firm's billing rates annually "based on what's going on in the legal market," that he polls attorneys with similar experience levels at similarly sized firms, that he believes his rates to be reasonable based on his research and experience, and that he will reduce the hours billed if he feels that they are excessive. He testified that his rate had increased from $395 an hour at the beginning of the litigation to $435 an hour two years later. He also testified about the rates for the two associates who assisted in the litigation, Eric Dowdy and Melanie Cogburn, and explained that he had been "very conservative in coming up with these numbers." Casey testified that Overlook's "reasonable fee for the necessary legal services . . . for pursuing and defending claims" under the UDJA was $121,640.15. Regarding estimates for Overlook's possible appellate fees, he broke down the appeals process by the services anticipated, testified to a reasonable rate and estimated number of hours for each, and predicted a total contingent appellate fee amount of $86,750: $45,000 to appeal to this Court, $11,250 to file a petition for review in the Texas Supreme Court, $22,500 for merits briefing in the Texas Supreme Court, and $8,000 for oral argument in the Texas Supreme Court.

Following the trial, the jury found the following amounts to be reasonable for Overlook's necessary legal services under the UDJA: $119,260.15 for representation in the trial

34

court; $28,125 for representation in this Court; and, in the Texas Supreme Court, $9,625 for filing a petition of review, $22,500 for merits briefing, and $8,000 for oral argument.

We conclude that the trial court's award of attorneys' fees was equitable and just and that the court did not abuse its discretion by awarding Overlook $119,260.15 in attorneys' fees and up to $68,250 in contingent appellate fees under the UDJA. *See Irwin*, 627 S.W.3d at 270; Tex. Civ. Prac. & Rem. Code § 37.009. We overrule Sakonchick's fourth issue.

## V. Whether the trial court erred in issuing sanctions

In his fifth issue, Sakonchick contends that the trial court abused its discretion by awarding Overlook $53,410.00 in sanctions against him. Specifically, he argues that the trial court erred by failing to hold an evidentiary hearing and that the amount was unreasonable, unjust, and excessive.

"We generally review a trial court's award of sanctions for an abuse of discretion." *Schlapper v. Forest*, No. 03-12-00702-CV, 2014 WL 3809753, at *3 (Tex. App.—Austin July 30, 2014, pet. denied) (mem. op.) (citing *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam)). "A trial court abuses its discretion if its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles," and "abuses its discretion in imposing sanctions only if it bases its order on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (citing *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam)); *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied), and *Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex. App.—Dallas 1994, writ denied)).

35

Because the order here was based on both Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code and tracks language from both provisions, we may review the order under the standard of either provision. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code §§ 10.001–.005; *Schlapper*, 2014 WL 3809753, at *3 (explaining that appellate court may review under standard of either provision cited in order for imposing sanctions); *see also Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (reviewing sanctions under Chapter 10 because trial court's written order specifically ordered penalty pursuant to Chapter 10); *American Flood*, 192 S.W.3d at 583–84 (where order imposing sanctions neither referred to nor tracked any language of specific rule, court reviews sanctions under rule that was cited in motion). If there is some evidence that supports the trial court's decision to impose sanctions, the trial court has not abused its discretion. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014).

Under Rule 13, a trial court may sanction a party whose pleading is groundless and brought in bad faith or groundless and brought for purpose of harassment. *See* Tex. R. Civ. P. 13. "Groundless" means there is no basis in law or fact and the pleading is not warranted by a good faith argument for the extension, modification, or reversal of existing laws. *See id.* "Groundlessness turns on the legal merits of a claim." *Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In determining whether a claim is groundless, a court "uses an objective standard" and looks to the facts available to the litigant and the circumstances at the time the pleading was filed. *Id.* (quoting *In re United Servs. Auto. Ass'n*, 76 S.W.3d 112, 116 (Tex. App.—San Antonio 2002, orig. proceeding)).

"A party acts in bad faith when discovery puts him on notice that his understanding of the facts may be incorrect, and he does not make reasonable inquiry before filing a pleading."

36

*Robson*, 267 S.W.3d at 407; *Monroe*, 884 S.W.2d at 819. In the context of Rule 13 sanctions, "[r]easonable inquiry means the amount of examination that is reasonable under the circumstances of the case." *Robson*, 267 S.W.3d at 406; *Monroe*, 884 S.W.2d at 817. Bad faith is more than bad judgment or negligence; it means the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose. *Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Robson*, 267 S.W.3d at 407. A party cannot avoid sanctions by claiming he was not acting with malicious or discriminatory purpose in bringing his claim. *Monroe*, 884 S.W.2d at 819. "Harass" is used in a variety of legal contexts to describe words, gestures, and actions that tend to annoy, alarm, and verbally abuse another person. *Zeifman v. Michels*, No. 03-12-00114-CV, 2013 WL 4516082, at *8 (Tex. App.—Austin Aug. 22, 2013, no pet.) (mem. op.) (citing *Thielemann*, 371 S.W.3d at 294).

"Courts presume that pleadings, motions, and other papers are filed in good faith, and the party moving for sanctions has the burden of overcoming this presumption." *Id.*; *see Low*, 221 S.W.3d at 614. However, direct evidence of the sanctioned individual's subjective intent is not necessary to rebut the presumption, and intent may be shown by circumstantial evidence. *See Keith v. Solls*, 256 S.W.3d 912, 919 (Tex. App.—Dallas 2008, no pet.) (citing *Schexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441 (Tex. App.—Austin 1997, no writ)); *Zeifman*, 2013 WL 4516082, at *8.

Under Chapter 10, a trial court may sanction a party or the party's attorney who signed a pleading or motion in violation of Section 10.001, which provides in relevant part:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . .

Tex. Civ. Prac. & Rem. Code § 10.001(1), (2); *see id.* § 10.004(a) (authorizing court to sanction person who has signed pleading or motion in violation of Section 10.001). Guided by these standards, we turn to Sakonchick's issues.

### *Evidentiary Hearing*

Sakonchick first argues that "[t]he failure to conduct an evidentiary hearing alone is fatal to the Sanctions and Order on Sanctions as there is no evidence to support any of the mandatory findings required for sanctions."

We have recognized that "an evidentiary hearing prior to the trial court's imposition of sanctions [i]s necessary under both Rule 13 and chapter 10," *Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 WL 5119211, at *14 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (mem. op.), because "[w]ithout such a hearing, the trial court has no evidence before it to determine that a pleading was filed in bad faith or for the purpose of harassment," *Dewalt v. Dewalt*, No. 03-03-00056-CV, 2004 WL 1574252, at *2 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.). However, although the trial court must hold a hearing to receive evidence, it may also take judicial notice of the evidence in the case file, including any pleadings and orders. *See Kramer*, 2017 WL 5119211, at *14; *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 667 (Tex. App.—Dallas 2003, no pet.); *Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 139 (Tex. App.—Texarkana 2000, no pet.),

*abrogated on other grounds by Keyes v. Weller*, 692 S.W.3d 274, 281 (Tex. 2024); *see also Emmons v. Purser*, 973 S.W.2d 696, 701 (Tex. App.—Austin 1998, no pet.) (reversing sanctions order and noting that parties were present at hearing but were not called to testify, and although court took judicial notice of case file, nothing in case file proved bad faith or harassment).

"It is well settled that a requirement to hold a 'hearing,' whether imposed by rule or statute, does not necessarily obligate the trial court to hold an *oral hearing*." *Enriquez v. Livingston*, 400 S.W.3d 610, 616 (Tex. App.—Austin 2013, pet. denied) (citing *Gulf Coast Inv. Corp. v. Nasa 1 Bus. Ctr.*, 754 S.W.2d 152, 153 (Tex. 1988) ("Unless required by the express language or the context of the particular rule, therefore, the term 'hearing' does not necessarily contemplate either a personal appearance before the court or an oral presentation to the court.")). Indeed, the Texas Supreme Court in a context "directly analogous" to Rule 13 recently held that "Rule [of Civil Procedure] 215.3's authorization of sanctions 'after notice and hearing' does not indicate a requirement of an oral hearing." *Nguyen v. Aventus Ins.*, No. 14-19-00607-CV, 2021 WL 4472479, at *1 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op.) (citing *Cire v. Cummings*, 134 S.W.3d 835, 844 (Tex. 2004)); *see* Tex. R. Civ. P. 215.3 (allowing court to impose sanction "after notice and hearing" if it finds that "any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for purposes of delay"). The supreme court has also held that a hearing was evidentiary in nature when, despite the absence of a formal offer of evidence, a court considered a deposition, affidavits, and exhibits attached to pleadings. *See Gene Duke Builders, Inc. v. Abilene Hous. Auth.*, 138 S.W.3d 907, 908 (Tex. 2004); *see also Windsor v. Round*, 591 S.W.3d 654, 672 (Tex. App.—Waco 2019, pet. denied) (finding that trial court conducted evidentiary hearing on sanctions motion because during hearing, it admitted affidavits

and took judicial notice of "the numerous and voluminous papers that have been filed"); *Addington v. Addington*, No. 14-03-00340-CV, 2004 WL 1472127, at *3 (Tex. App.—Houston [14th Dist.] July 1, 2004, no pet.) (mem. op.) (explaining that "whether the documents were admitted or the court judicially noticed them, it is clear that there was some evidence before the court regarding the Rule 13 sanctions allegations.").

Although neither party testified at the hearing on Overlook's amended motion for sanctions, the trial court, at Overlook's request, took judicial notice of "all pleadings and orders on file in this cause" as well as in the HOA Lawsuit. Sakonchick emphasized this evidence, much of which he noted was attached to the sanctions motion, when arguing that it showed that "at every point and juncture there is law to support [his] claims." The court also informed Sakonchick that it would permit him to file as part of the record and would consider his summary of Overlook's billing records, which he attempted unsuccessfully to offer into evidence during the hearing. Sakonchick later attached his demonstrative to a letter that he filed with the court. For these reasons, Sakonchick's assertion that the trial court did not conduct an evidentiary hearing is refuted by the record.

Despite his repeated requests throughout the litigation that the trial court judicially notice part or all of its case file, Sakonchick now argues that it was improper for the court to take judicial notice of the filings in this case and the HOA Lawsuit because Overlook did not provide the court with copies of the documents. His argument is without merit.

As with other evidence-admissibility issues, any error in taking judicial notice must be preserved in the court below. *See In re N.T.*, 335 S.W.3d 660, 669 (Tex. App.—El Paso 2011, no pet.); *In re K.C.B.*, 280 S.W.3d 888, 893 (Tex. App.—Amarillo 2009, pet. denied); *In re I.V.*, 61 S.W.3d 789, 795 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); *In re M.W.*,

959 S.W.2d 661, 664 (Tex. App.—Tyler 1997, writ denied). Accordingly, a party must timely object to the trial court's taking of judicial notice or any error in the procedure is waived. *See* Tex. R. App. P. 33.1(a)(1)(A); *N.T.*, 335 S.W.3d at 669.

At the hearing, Overlook asked the trial court to "take judicial notice of the pleadings in this case and of the pleadings in the [HOA Lawsuit] which [had also been filed] in the same court." The court explained that it was reviewing the files in both cases, including the documents to be filed by Sakonchick after the hearing.

Under the Texas Rules of Evidence, a court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Tex. R. Evid. 201(b)(2). "This provision has been construed to permit a court to take judicial notice of its own orders, records, and judgments." *In re Smith*, No. 03-23-00595-CV, 2024 WL 216556, at *1 (Tex. App.—Austin Jan. 19, 2024, no pet.) (mem. op.); *see Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961) ("It is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties."); *A.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00593-CV, 2020 WL 560585, at *2–3, 11 (Tex. App.—Austin Feb. 5, 2020, pet. denied) (mem. op.) (noting that trial court may sua sponte take judicial notice of its prior orders and fact findings therein). A court may also take judicial notice of "the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in a proceeding before the court" under the UDJA. Tex. Civ. Prac. & Rem. Code § 38.004. The usual and customary attorney's fees are presumed to be reasonable. *Id.* § 38.003. Thus, the trial court did not abuse its discretion by taking judicial notice of its own records at the hearing. We overrule Sakonchick's fifth issue as it pertains to an evidentiary hearing on sanctions.

41

***Whether Sanctions Amount Was Unreasonable, Excessive, or Unjust***

Sakonchick next argues that the $53,410 in attorneys' fees-shifting sanctions awarded by the trial court was excessive and that Overlook failed to demonstrate that the amount was reasonable.

"Before a court may exercise its discretion to shift attorney's fees as a sanction, there must be some evidence of reasonableness because without such proof a trial court cannot determine that the sanction is 'no more severe than necessary' to fairly compensate the prevailing party." *Nath v. Texas Children's Hosp.*, 576 S.W.3d 707, 709 (Tex. 2019). "Consequently, when a party seeks attorney's fees as sanctions, the burden is on that party to put forth some affirmative evidence of attorney's fees incurred and how those fees resulted from or were caused by the sanctionable conduct." *Id.* (quoting *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016)).

We recently described the "lodestar method" that courts use to determine the reasonableness and necessity of attorneys' fees in a fee-shifting situation:

> Under this method, the claimant first must provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 500–01 (Tex. 2019). The factfinder then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. *Id.* at 501. Although billing records are not required to prove that requested fees are reasonable and necessary, they "are strongly encouraged," particularly when reasonableness and necessity are disputed. *Sims v. Sims*, 623 S.W.3d 47, 66–67 (Tex. App.—El Paso 2021, pet. denied) (quoting *Rohrmoos Venture*, 578 S.W.3d at 502). To show that requested attorney's fees are reasonable and necessary, the claimant must, at a minimum, present evidence of (1) the particular services performed, (2) the identity of each attorney who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each attorney performing such services. *Sims*, 623 S.W.3d at 66 (citing *Rohrmoos Venture*, 578 S.W.3d at 502). "General,

conclusory testimony devoid of any real substance will not support a fee award." *Rohrmoos Venture*, 578 S.W.3d at 502.

*Schultz v. Schultz*, No. 03-22-00762-CV, 2024 WL 3586020, at *4 (Tex. App.—Austin July 31, 2024, no pet.) (mem. op.).

During the jury trial on attorneys' fees, which was presided over by the same judge who presided over the sanctions hearing and who subsequently granted Overlook's amended sanctions motion, the trial court admitted into evidence detailed billing statements prepared by Overlook's attorneys with columns reflecting specific tasks carried out by each attorney in his or her representation of Overlook, the date on which the tasks occurred, which attorney performed the tasks, the attorney's hourly rate and time spent on the tasks, the billable amount, the percentages of each tasks that were and were not recoverable under the UDJA, and the lodestar amounts recoverable under the UDJA. In the sanctions hearing, Overlook explained that it was requesting two "groups of fees" to be awarded as sanctions: $4,500 incurred by Overlook in asserting and seeking the sanctions and $60,000 incurred in defending against the claims brought by Sakonchick in his seven pleadings. Overlook stated that although the latter amount was actually approximately $64,000, it was "rounding down to – to 60,000 on that" for a "total ask" of $64,500.[8]

Overlook's lodestar calculations, supported by the detailed billing statements, are presumed to reflect "the reasonable and necessary attorney's fees that can be shifted to the non-prevailing party." *Rohrmoos Venture*, 578 S.W.3d at 499. Further, in having awarded attorneys' fees to Overlook, the trial court had judicial notice of the likewise presumably reasonable "usual and customary attorney's fees." Tex. Civ. Prac. & Rem. Code § 38.003–04.

---

[8] These fees were distinct from those for which evidence had been presented to the jury, which consisted exclusively of fees incurred for representation on matters arising under the UDJA.

43

Nevertheless, the trial court did not award Overlook the full amount of its requested sanctions. As the court explained in its order on Overlook's amended sanctions motion, it "excluded from the sanctions an amount far more than necessary to ensure that Sakonchick was not penalized for bringing" his claim that "the *actual* construction and vehicles blocked his safe use of the road," which the court noted that it "ha[d] not sanctioned or dismissed as groundless" and which had been dropped "well before trial."

From this record, we conclude that the sanctions amount was reasonable under the lodestar method. *See Nath*, 576 S.W.3d at 709–10; *Rohrmoos Venture*, 578 S.W.3d at 499–502. Next, we turn to whether the award was excessive and unjust.

In determining whether the trial court abused its discretion in awarding sanctions, we must ensure that the sanctions were appropriate and just. *American Flood*, 192 S.W.3d at 583 (citing *TransAmerica Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991)). The Texas Supreme Court has articulated a two-part inquiry: First, we must ensure that there is a direct relationship between the improper conduct and the sanction imposed; because the sanction should be directed toward the true offender, the trial court must attempt to determine whether sanctions should be imposed on the party, its attorney, or both. *American Flood*, 192 S.W.3d at 583–84; *TransAmerican*, 811 S.W.2d at 917. Second, the sanction must not be excessive. *American Flood*, 192 S.W.3d at 583–84; *TransAmerican*, 811 S.W.2d at 917. The sanction "should be no more severe than necessary to satisfy its legitimate purposes." *TransAmerican*, 811 S.W.2d at 917. In determining whether a sanction is just, we must review the entire record but confine our review of the sanctions order to the grounds specified by the trial court. *American Flood*, 192 S.W.3d at 583–84; *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 94 n.1 (Tex. 2009); *Pool v. Diana*,

44

No. 03-08-00363-CV, 2010 WL 1170234, at *9 (Tex App.—Austin Mar. 24, 2010, pet. denied) (mem. op.).

The trial court set forth the grounds for its sanctions award in its order granting Overlook's amended sanctions motion. The court noted that Sakonchick is an attorney and represented himself in both this case and the 2008 HOA Lawsuit. The court found that his original petition, amended petitions, and first supplement and request for injunctive relief were "largely groundless" under Rule 13 and that good cause existed to impose sanctions. Having judicially noticed its final order in the HOA Lawsuit—which held that Canon Wren was a public street and denied Sakonchick's request for a declaratory judgment that it was a private road—the court explained that "any reasonable read" of the order would "demonstrate that Sakonchick's position was barred" and that his claims in this cause were collaterally estopped. However, rather than making a reasonable inquiry, Sakonchick "undertook no effort to demonstrate otherwise" and "failed to do so even through multiple summary judgments and a final trial on the attorney's fees." His assertion of a private easement, the court found, "was asserted without any legal basis and contrary to the court's final judgment in the HOA Lawsuit." Moreover, he had also "asserted numerous groundless claims . . . challenging Overlook's construction of a parking garage," for which he never disputed that Overlook had all necessary permits. His request for an injunction seeking removal of the garage's lower driveway had "no basis in law or fact" and was "groundless at the time it was filed." The court continued:

> Sakonchick's pleadings were groundless at the time they were filed and were brought in bad faith and for the purpose of harassment. Specifically, Sakonchick's pleadings were groundless because his claims are barred by collateral estoppel from the HOA Lawsuit, and additionally, there was no factual or legal basis for Sakonchick's myriad claims for nuisance, negligence, damages and injunctive relief asserted throughout his various petitions, except as noted in one portion of

45

one claim that he advanced, which, though the Court has not sanctioned him over that *one* portion of *one* claim, the Court still has concerns that it was, perhaps, not brought legitimately either.

The court concluded that all of Sakonchick's pleadings as well as his request for injunctive relief were signed in violation of section 10.001 because they "were filed for an improper purpose and contain allegations or factual contentions lacking evidentiary support." Conversely, the court determined that the evidence presented by Overlook concerning its attorneys' fees was credible and that the sanctions amount of $53,410 "represent[ed] reasonable and necessary attorney's fees incurred by Overlook in defending frivolous claims brought by Sakonchick."

From this record and given the prolonged and expansive nature of Sakonchick's litigation involving Canon Wren, we conclude that the sanction amount was not excessive or unjust. *See American Flood*, 192 S.W.3d at 583; *Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex. 1992) (observing that legitimate purposes of sanctions are to secure compliance with rules, deter similar misconduct, and punish violators); *Wein v. Sherman*, No. 03-10-00499-CV, 2013 WL 4516013, at *9–10 (Tex. App.—Austin Aug. 23, 2013, no pet.) (mem. op.) (acknowledging that sanctions amount was "substantial" but concluding it was not excessive "in light of the entire record and considering that it was intended not only to reimburse" but also "to punish . . . and deter similar conduct in the future"). The trial court did not abuse its discretion by awarding Overlook $53,410 in sanctions against Sakonchick. *See Unifund*, 299 S.W.3d at 97; *American Flood*, 192 S.W.3d at 583; *Wein*, 2013 WL 4516013, at *10. We overrule Sakonchick's fifth issue.

**CONCLUSION**

Having overruled Sakonchick's issues, we affirm the trial court's judgment.

_____

Maggie Ellis, Justice

Before Justices Triana, Crump, and Ellis

Affirmed

Filed:   February 27, 2025